IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK S., on behalf of himself and as parent and guardian of his minor child, A.S., and on behalf of all other similarly situated individuals, | ) ) ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| | ) |
| v. | ) **CLASS ACTION COMPLAINT** |
| | ) |
| COLLEGE BOARD, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) **INJUNCTIVE RELIEF DEMANDED** |
| | ) |
| | ) |
| | ) |
| | ) |

## CLASS ACTION COMPLAINT

Plaintiff Mark S., on behalf of himself and as parent and guardian of his minor child, A.S., and on behalf of all other similarly situated individuals ("Plaintiff"), by and through his attorneys, brings this Class Action Complaint against Defendant College Board and makes the following allegations based upon knowledge as to himself and the acts of himself and his minor child, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.      Every year, hundreds of thousands of students in Illinois and millions of students across the United States take one or more standardized tests provided by Defendant College Board – including, the SAT, PSAT/NMSQT, PSAT 10, PSAT 8/9 and Advanced Placement Exams ("AP Exams") (collectively, the "Standardized Tests").  While students were made to believe the results of these tests would significantly impact their futures, to Defendant College

1

Board the tests served a wholly different purpose – *i.e.*, to obtain highly valuable personal student information. Defendant College Board obtained the students' personal information through the use of unfair and deceptive practices such as: (a) misrepresenting that it did not sell the information; (b) falsely claiming that the personal information would "[g]uide your counselors in helping you plan your future"; and (c) preying on students' hopes and fears by making it appear that providing the information could assist with college acceptance and financial aid while not providing the information would be detrimental to those goals – when in fact, neither scenario was true. As Defendant College Board has admitted, whether a student provided the information did not impact his chance of being accepted into colleges or scholarship programs in any way.

2. Defendant College Board's practices have injured Plaintiffs and class and sub-class members (collectively, "Class Members") in numerous ways, including by:

    a. Diminishing the value of the personal information of Plaintiff and Class Members;

    b. Invading Plaintiff's and Class Members' privacy;

    c. Depriving Plaintiff and Class Members of the ability to control the sale of personal information of students under the age of sixteen;

    d. Depriving Plaintiff and Class Members of their right to control and to choose how to use their identities for commercial purposes;

    e. Inhibiting the ability of Plaintiff and Class Members to control the information colleges, universities and other third parties received about them;

      f.     Precluding Plaintiff and Class Members from conditioning Defendant College Board's sale of their personal information on an agreement to provide Plaintiff and Class Members with a portion of the proceeds;

      g.    Causing Plaintiff and Class Members to incur the costs associated with spending time to decipher whether solicitations made by third-party organizations were genuine or solely attempts to obtain money from Plaintiff and Class Members based on information third-party organizations purchased from Defendant College Board; and

      h.    Releasing, transferring, disclosing and disseminating students' private, confidential and sensitive school student records to third parties in violation of state law.

3.     Plaintiff retains a significant interest in ensuring that his minor child's personal information, which remains in Defendant College Board's possession, is protected from further unlawful sales and use, and he seeks to remedy the harms suffered as a result of College Board's improper conduct for himself and on behalf of similarly situated persons whose personal information was improperly used.

4.     Plaintiff, on behalf of himself and on behalf of all other similarly situated persons, seeks to recover damages, including statutory and punitive damages; equitable relief, including injunctive relief designed to prevent Defendant College Board from selling students' personal information and the resulting injuries and to require College Board to recover all of the personal information and school student records it has unlawfully and improperly sold, released, transferred, disclosed and disseminated; restitution; disgorgement; reasonable attorney's fees, costs and expenses; and all other remedies this Court deems proper.

3

## PARTIES

5.      Plaintiff Mark S., individually and as parent and legal guardian for his minor child A.S., is an Illinois resident.  At relevant times, A.S. was under the age of sixteen and attended a school within the Chicago Public School District in Illinois.  Between in or about October 2018 and October 2019, A.S. registered for and took various standardized tests offered by Defendant College Board, including the PSAT/NMSQT, multiple AP Exams and the PSAT 9.  A.S. took the tests in Illinois.

6.      Defendant College Board is a not-for-profit membership association chartered in the State of New York with a principal place of business in New York and its Midwest regional office in Chicago, Illinois.  College Board does business throughout the United States, including in the Northern District of Illinois.  College Board earns substantial revenues and highly compensates its top executives.  In 2017, College Board's President and CEO received total compensation in excess of $1.5 million, while its Chief Operating Officer and Chief of Global Policy, Advocacy & Communications received total compensation of nearly $1 million and $630,000, respectively.  At relevant times, Defendant College Board offered and administered the Standardized Tests to students, including Plaintiffs and Class Members. Between approximately 2016 and the present, Defendant College Board has contracted with the Illinois State Board of Education to provide the SAT and various PSAT exams to Illinois high school students at a cost of almost $32 million.  In 2018, over five million students took a PSAT exam, over two million students took the SAT and over two million students took an AP Exam.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action,

the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Classes.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendant College Board because it is authorized to do business in this District and regularly conducts business in this District, has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, licensing and marketing within this state.  College Board purposely availed itself of the laws of Illinois, and engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to persons throughout the United States, including persons College Board knew or had reason to know are located in Illinois (including in this District).  College Board's practice of selling the personal information of non-Illinois residents has caused and proximately caused harm in Illinois and to Illinois residents by enabling colleges and universities to expand their nationwide recruiting efforts: (a) making it more difficult for Illinois residents to gain admission to those colleges and universities; and (b) resulting in Illinois residents leaving Illinois for their post-secondary education.  The out-migration described in the preceding sentence has contributed to a decrease in Illinois' population, the loss of future workforce talent and tax revenue in Illinois, and the recent loss of a federal congressional seat.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the unlawful conduct alleged in this Class Action Complaint occurred in, was directed to and/or emanated in part from this District.

## FACTUAL ALLEGATIONS

**I.    Defendant College Board's Standardized Tests**

10.    At relevant times, Defendant College Board offered and administered to students a series of standardized tests referred to as "The SAT Suite of Assessments," which was comprised of the SAT, PSAT/NMSQT, PSAT 10 and PSAT 8/9.

11.    According to Defendant College Board, the SAT Suite of Assessments "is an integrated system of tests that measure what students are learning in class, and what they need to succeed in college."

12.    According to Defendant College Board, the PSAT 8/9 set a readiness baseline for students; the PSAT/NMSQT and PSAT 10 allowed for a check-in on student progress; and the SAT connected students to college.

13.    Defendant College Board also offered high-school students a "college-level academic experience" that culminated in an AP Exam for the subject area in which a student took a class – *e.g.*, AP U.S. History or AP Physics.  Each AP Exam was standardized.  For the 2018-2019 school year each AP Exam cost $94.

14.    Students were led to believe that their level of performance on the Standardized Tests offered and administered by Defendant College Board would significantly impact their futures, thereby placing students taking the exams under intense pressure and stress.

**II.    Defendant College Board's Student Search Service**

15.    In connection with the "Preadministration" process for the Standardized Tests, Defendant College Board offered and promoted to students a separate product called Student Search Service.

16.     Student Search Service was a product that allowed Defendant College Board to obtain and sell students' personal information without the necessary consents.   Between September 1, 2016 through the present, Defendant College Board charged between $0.42 and $0.47 per student name sold to a third-party organization.

17.     In connection with Student Search Service, Defendant College Board collected the following information from students who took the AP Exams: (a) name; (b) birthdate; (c) email address; (d) home address; (e) expected high school graduation date; (f) grade point average; (g) gender; (h) ethnicity; and (i) parents' educational backgrounds.   In addition to the information described in the preceding sentence, in connection with Student Search Service, College Board obtained the following information from students who took the PSAT/NMSQT and PSAT 10: (a) intended college major and (b) parents' military backgrounds.   In addition to the information College Board collected from students taking AP Exams, the PSAT/NMSQT and PSAT 10, in connection with Student Search Service, College Board obtained the following information, among other information, from students who took the SAT: (a) citizenship status; (b) religious preference; (c) parental income; (d) high school courses and activities, including participation in religious activities or clubs; and (e) interest in the ROTC.

18.     At relevant times, Defendant College Board used unfair and deceptive means to obtain the above-described personal information from students, including:

> a.     Misrepresenting in Defendant College Board's publications titled "Our Commitment to Student Data Privacy" and "Data Privacy Overview" that it did not sell student data or information;

b. Making it appear as if participation in Student Search Service was voluntary while proactively engaging in conduct Defendant College Board knew would lead to students' participation, such as:

    i. "Strongly recommend[ing]" in the Student Answer Sheet Instructions to the SAT, PSAT/NMSQT and PSAT 10 that students answer all of the Student Search Service questions under the false pretense that provision of the information "[g]uide[s] your counselors in helping you plan your future";

    ii. Directing AP Exam proctors and teachers in a document titled "AP Preadministration Instructions" to "[e]ncourage your students to answer 'Yes'" to the question regarding whether students want to participate in Student Search Service;

    iii. Directing SAT, PSAT/NMSQT and PSAT 10 exam proctors and teachers in written materials provided by Defendant College Board in connection with the administration of the exams to provide instructions regarding Student Search Service that falsely made it appear as if declining to participate in the service could lead to dire consequences, such as missing out on financial aid opportunities; and

    iv. Preying on students' hopes and fears by making it appear that providing the information could assist with college acceptance and financial aid while not providing the information would be detrimental to those goals – when in fact, neither scenario was true; and

c.   Concealing from students that Defendant College Board's true purpose in obtaining the personal information was to sell it to third party organizations in order to increase its already substantial revenues.

19.    After obtaining students' personal information, Defendant College Board held out the identities of students (*e.g.*, names and email addresses) who participated in Student Search Service, including the identities of Plaintiffs and Class Members, on or in connection with offering Student Search Service for sale to third parties for the purpose of advertising and promoting Student Search Service.

**III.    Defendant College Board's Sale of Students' Personal Information**

20.    Notwithstanding Defendant College Board's representations to the contrary, Defendant College Board routinely sold students' personal information to third parties in connection with its Student Search Service.

21.    Indeed, during a May 2019 Illinois Senate legislative hearing, a representative of Defendant College Board testified that College Board sells access to student data for $0.45 per student.

22.    Further, while Defendant College Board allowed students who participated in Student Search Service to later opt out, it made clear in its written materials that opting out would not stop entities that previously received the students' personal information from continuing to send solicitations – a tacit acknowledgment of College Board's data sales.

23.    Moreover, in May 2018, the United States Department of Education's Privacy Technical Assistance Center published "significant guidance" in which it found that Defendant College Board and another standardized testing company "use completed surveys to develop

9

tailored lists of students, which the testing companies then sell to institutions of higher education (IHEs), scholarship organizations, and other organizations."

24. Additionally, in July 2018, the Future of Privacy Forum and the Software & Information Industry Association – two organizations funded by the technology industry – downgraded Defendant College Board's status as a signatory to a Student Privacy Pledge that addressed data privacy practices to "under review" based on concerns about College Board's information usage practices.

**IV.     Market for Data**

25. Several online companies allow individuals to sell their own data online.

26. One such company estimates that an individual can earn up $2,000 per year selling his data.

27. By obtaining and selling students' data under false pretenses, Defendant College Board has diminished the value of students' data.

**V.      Allegations Related Plaintiff and His Minor Child**

28. Between approximately October 2018 and October 2019, A.S. took the PSAT/NMSQT, the PSAT 9 and three AP Exams and paid all applicable fees and costs.

29. In connection with the exams described in paragraph 28, above, A.S. provided Defendant College Board with personal information consistent with that described in paragraph 17, above.

30. At all times, A.S. was under the age of sixteen.

31. On information and belief, based on publicly-available versions of Defendant College Board's Data Load schedules, Defendant College Board first made A.S.'s personal information available for sale on January 7, 2019.

32.     At no time did A.S.'s parents consent to the sale of A.S.'s personal information.

33.     At no time did A.S. or A.S.'s parents consent in writing to Defendant College Board's use of her identity for commercial purposes

34.     Since taking the exams described in paragraph 28, above, A.S. has received solicitations based on her submission of personal information to College Board.

## VI.     Defendant College Board's Failure to Comply with Illinois Law

### *The Illinois School Student Records Act*

35.     Illinois public policy as set forth in the Illinois School Student Records Act, 105 ILCS § 10/1, *et seq.* ("ISSRA"), seeks to protect the privacy and confidentiality of Illinois school student records by prohibiting their release, transfer, disclosure or dissemination, except in extremely limited circumstances that do not include the release, transfer, disclosure and dissemination of student school records engaged in by Defendant College Board.

36.     Pursuant to ISSRA, "school student record" means "any writing or other recorded information concerning a student by which a student may be individually identified, maintained by a school or at its direction . . . regardless of how or where the information is stored."

37.     Pursuant to ISSRA, the information Defendant College Board collected about students in connection with Student Search Service constitutes school student records.

38.     Pursuant to ISSRA, Defendant College Board is a "school" because it is a "person, agency or institution which maintains school student records from more than one school."

39.     Pursuant to Defendant College Board's Illinois fiscal year 2017 contract with the Illinois State Board of Education, it agreed to comply with the relevant requirements of ISSRA regarding the confidentiality of school student records.  On information and belief, the contracts

between College Board and the Illinois State Board of Education for subsequent years required the same compliance.

40.    In violation of ISSRA, Defendant College Board released, transferred, disclosed and disseminated school student records.

### The Children's Privacy Protection and Parental Empowerment Act

41.    Illinois public policy, as set forth in the Children's Privacy Protection and Parental Empowerment Act, 325 ILCS § 17/1, *et seq.* (the "Children's Privacy Protection Act"), seeks to empower parents to protect their children's personal information by preventing the sale or purchase of the personal information of a child under sixteen without parental consent.

42.    The Children's Privacy Protection Act, defines a "child" as a person under the age of sixteen.  It further defines "personal information" as a person's name, address, telephone number or "any other information that can be used to locate or contact a specific individual."

43.    Pursuant to the Children's Privacy Protection Act, the "sale or purchase of personal information concerning an individual known to be a child without parental consent is prohibited."

44.    By selling the personal information of children without parental consent, Defendant College Board violated the Children's Privacy Protection Act.

### The Right of Publicity Act

45.    Illinois law also empowers individuals to control other's use of their identities for commercial purposes without first receiving written consent.

46.    The Illinois Right of Publicity Act, 765 ILCS § 1075/1, *et seq.*, recognizes that every individual has a right of publicity – namely, "to control and to choose whether and how to use an individual's identity for commercial purposes."

12

47.     Section 5 of the Right of Publicity Act defines "commercial purpose" as the "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product . . . or services; (ii) for the purposes of advertising or promoting products . . . or services . . . ."

48.     Section 5 of the Right of Publicity Act defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name . . . ."

49.     Pursuant to § 30 of the Right of Publicity Act, "a person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons . . . or their authorized representatives."

50.     In violation of the Right of Publicity Act, Defendant College Board used the identities of students who participated in Student Search Service – including Plaintiffs and Class Members – for commercial purposes without having obtained previous written consent from the appropriate person or persons or their authorized representatives.  The information provided by College Board that allowed others to be able to identify Plaintiffs and Class Members, included name, home address, email address and date of birth.

**VII.    Plaintiff's and Class Members' Injuries and Damages.**

51.     As a result of Defendant College Board's sale of students' personal information, Plaintiff and Class Members have suffered and will continue to suffer severe consequences, as College Board's conduct has, among other things:

      a.     Diminished the value of the personal information of Plaintiff and Class Members;

b.    Invaded Plaintiff's and Class Members' privacy;

c.    Deprived Plaintiff and Class Members of the ability to control the sale of personal information of students under the age of sixteen;

d.    Deprived Plaintiff and Class Members of their right to control and to choose how to use their identities for commercial purposes;

e.    Inhibited the ability of Plaintiff and Class Members to control the information colleges, universities and other third parties receive about them;

f.    Precluded Plaintiff and Class Members from conditioning Defendant College Board's sale of their personal information on an agreement to provide Plaintiff and Class Members with a portion of the proceeds;

g.    Caused Plaintiff and Class Members to incur the costs associated with spending time to decipher whether solicitations made by third-party organizations are genuine or solely attempts to obtain money from Plaintiff and Class Members based on information third-party organizations purchased from Defendant College Board; and

h.    Resulted in the release, transfer, disclosure and dissemination of students' private, confidential and sensitive school records to third parties in violation of state law.

52.    Defendant College Board's wrongful actions have directly and proximately caused Plaintiff and Class Members to face the immediate and continuing increased risk of economic damages and other actual harm for which they are entitled to compensation, including:

a.    Damages to, and diminution in value of, the personal information College Board obtained and sold;

      b.      Costs associated with reviewing and trying to stop unwanted solicitations, such as time taken from the enjoyment of one's life, and the inconvenience, nuisance, cost and annoyance of dealing with the unwanted solicitations; and

      c.      The loss of Plaintiff's and Class Members' privacy.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff bring this action on behalf of himself and his minor child as a class action under Federal Rule of Civil Procedure 23, seeking damages and equitable relief on behalf of the following nationwide Class for which Plaintiff seeks certification:

> All persons residing in the United States who took the SAT, PSAT/NMSQT, the PSAT 10, the PSAT 8/9 or an AP Exam and participated in Defendant College Board's Student Search Service (the "Nationwide Class").

54.    Additionally, Plaintiff brings this action on behalf of the following subclass of individuals seeking damages and relief on behalf of the following:

> All persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington and West Virginia who took the SAT, PSAT/NMSQT, the PSAT 10, the PSAT 8/9 or an AP Exam and participated in Defendant College Board's Student Search Service (the "Intrusion Upon Seclusion Class").

55.    Additionally, Plaintiff brings this action on behalf of an Illinois subclass seeking damages and equitable relief on behalf of the following:

> All persons residing in the State of Illinois who took the SAT, PSAT/NMSQT, the PSAT 10, the PSAT 8/9 or an AP Exam and participated in Defendant College Board's Student Search Service (the "Illinois Subclass").

56. Additionally, Plaintiff brings this action on behalf of an Illinois subclass seeking damages and equitable relief on behalf of the following:

> All persons under the age of sixteen and residing in the State of Illinois who took the SAT, PSAT/NMSQT, the PSAT 10, the PSAT 8/9 or an AP Exam and participated in Defendant College Board's Student Search Service (the "Illinois Child Subclass").

57. Excluded from the Classes are: (a) Defendant College Board; (b) any parent, affiliate or subsidiary of Defendant College Board; (c) any entity in which Defendant College Board has a controlling interest; (d) any of Defendant College Board's officers or directors; or (e) any successor or assign of Defendant College Board. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

58. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

59. **Numerosity.** Consistent with Rule 23(a)(1), the Classes are so numerous that joinder of all members is impracticable. While Plaintiff does not know the exact number of members of the Classes, Plaintiff believes the Nationwide Class contains over 5 million people. Class Members may be identified through objective means, including objective data available to Defendant College Board regarding who participated in Student Search Service. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice. All members of the Nationwide Class and Illinois and Illinois Child Subclasses are readily ascertainable because College Board has access to information regarding the identity of each student who participated in Student Search Service.

60. **Commonality and predominance.** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions

affecting only individual members of the Classes. Common questions include, but are not limited to the following:

       a.     Whether Defendant College Board engaged in wrongful conduct as alleged herein;

       b.     Whether Defendant College Board sold the personal information of Plaintiff and Class Members;

       c.     Whether Defendant College Board misrepresented that it would not sell the personal information of Plaintiff and Class Members;

       d.     Whether Defendant College Board obtained the personal information of Plaintiff and Class Members under false pretenses;

       e.     Whether Defendant College Board invaded Plaintiff's and Class Members' privacy;

       f.     Whether Defendant College Board obtained previous written consent to use Plaintiff's and Class Members' identities for commercial purposes;

       g.     Whether Defendant College Board engaged in unfair or deceptive trade practices by failing to disclose that it sold Plaintiff's and Class Members' personal information;

       h.     Whether Plaintiff and Class Members suffered damages as a proximate result of Defendant College Board's conduct; and

       i.     Whether Plaintiff and Class Members are entitled to damages, equitable relief and other relief.

     61.    **Typicality.** Plaintiff's claims are typical of the claims of the Nationwide Class, Intrusion Upon Seclusion Class, Illinois Subclass and Illinois Child Subclass (subclasses,

collectively referred to as the "Subclasses") he seeks to represent because Plaintiff and all members of the proposed Nationwide Class and Subclasses have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests to advance adverse to the interests of the other members of the Nationwide Class and Subclasses.

62. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Nationwide Class and Subclasses and have retained as their counsel attorneys experienced in class actions and complex litigation.

63. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

64. In the alternative, the proposed classes may be certified because:

   a.   The prosecution of separate actions by each individual member of the Nationwide Class and Subclasses would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant College Board;

   b.   The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class

18

Members or which would substantially impair their ability to protect their interests; and

c.      Defendant College Board acted or refused to act on grounds generally applicable to the proposed classes, thereby making final and injunctive relief appropriate with respect to members of the Nationwide Class and Subclasses.

65.     Pursuant to Rule 23(c)(4) particular issues are appropriate for certification – namely the issues described in paragraph 60, above, because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

**CLAIMS FOR RELIEF**

**<u>COUNT ONE</u>**
**(BREACH OF EXPRESS CONTRACT)**
**(On behalf of all Classes)**

66.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

67.     Plaintiff and Class Members participated in Student Search Service based on the express agreement that Defendant College Board would not sell their personal information (the "Express Contract").

68.     In consideration for Defendant College Board's express agreement, Plaintiff and Class Members agreed to provide Defendant College Board with personal information.

69.     Plaintiff and Class Members fully performed their obligations under the Express Contract.

70.     Defendant College Board breached the Express Contract by selling Plaintiff's and Class Members' personal information to third parties.

71.     As a direct and proximate result of Defendant College Board's breach of the Express Contract, Plaintiff and Class Members sustained actual losses as alleged above.

72.     Defendant College Board's breach of the Express Contract was a direct and legal cause of Plaintiff's and Class Members' injuries and damages as alleged above.

**COUNT TWO**
**UNJUST ENRICHMENT**
**(On behalf of all Classes)**

73.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

74.     Plaintiff and Class Members conferred a monetary benefit on Defendant College Board – namely, they provided and entrusted their personal information to College Board.

75.     Plaintiff and Class Members did not authorize Defendant College Board to sell, or otherwise consent to College Board selling, their personal information.

76.     Defendant College Board appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from College Board's conduct toward Plaintiff and Class Members as described herein – namely, (a) Plaintiff and Class Members conferred a benefit on College Board, and College Board accepted or retained that benefit; and (b) College Board used Plaintiff's and Class Members' personal information for business purposes – namely, it sold the information.

77.     Defendant College Board sold Plaintiff's and Class Members' personal information and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members conferred upon College Board.

78.     Defendant College Board acquired Plaintiff's and Class Members' personal information through inequitable means in that it misrepresented that it did not sell personal information.

79.     Plaintiff and Class Members have no adequate remedy at law.

80.     Under the circumstances, it would be unjust and unfair for Defendant College Board to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

81.     Under the principles of equity and good conscience, Defendant College Board should not be permitted to retain the personal information belonging to Plaintiff and Class Members because College Board obtained that information under false pretenses.

82.     Defendant College Board should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from the sale of Plaintiff's and Class Members' personal information.

## COUNT THREE
### INTRUSION UPON SECLUSION
#### (On behalf of the Intrusion Upon Seclusion Subclass)

83.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

84.     Plaintiff and Class Members had a legitimate expectation of privacy to their personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

85.     Defendant College Board owed a contractual duty to Plaintiff and Class Members to keep their personal information confidential.

86.     Notwithstanding its clear duty, Defendant College Board sold Plaintiff's and Class Members' personal information to unauthorized third parties.

87.     By way of Defendant College Board's conduct, it allowed unauthorized third parties to access and examine the personal information of Plaintiff and Class Members.

88.     The unauthorized release to, custody of and examination by unauthorized third parties of the Plaintiff's and Class Members' personal information – information that contained sensitive details regarding minor children – is highly offensive to a reasonable person.

89.     The intrusion was into a place or thing that was private and entitled to be private. Given Defendant College Board's contractual duty not to sell Plaintiff's and Class Members' personal information,  it was reasonable for Plaintiff and Class Members to believe that such information would be kept private and confidential and would not be disclosed without their authorization.

90.     Defendant College Board's sale of Plaintiff's and Class Members' personal information constitutes an unauthorized intrusion or prying into Plaintiff's and Class Members' seclusion, and the intrusion was of a kind that would be highly offensive to a reasonable person.

91.     Defendants acted with a knowing state of mind when they sold Plaintiff's and Class Members' personal information.

92.     As a direct and proximate result of the above acts and omissions of Defendant College Board, the personal information of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages, anguish and suffering.

93.     Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff

and Class Members in that the personal information sold by College Board can be viewed and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

**COUNT FOUR**
**INTRUSION UPON SECLUSION**
**(On behalf of the Illinois and Illinois Child Subclasses)**

94.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

95.     Plaintiff and Class Members had a legitimate expectation of privacy to their school student records and personal information and were entitled to protection of this information against disclosure to unauthorized third parties.

96.     Defendant College Board owed a contractual and statutory duty to Plaintiff and Class Members to keep their school student records and personal information confidential.

97.     Notwithstanding its clear duties, Defendant College Board sold, released, transferred, disclosed and disseminated Plaintiff's and Class Members' school student records and personal information to unauthorized third parties.

98.     By way of Defendant College Board's conduct, it allowed unauthorized third parties to access and examine the school student records and personal information of Plaintiff and Class Members.

99.     The unauthorized release to, custody of and examination by unauthorized third parties of the Plaintiff's and Class Members' school student records and personal information –

information that contained sensitive details regarding minor children – is highly offensive to a reasonable person.

100.    The intrusion was into a place or thing that was private and entitled to be private. Given Defendant College Board's statutory and contractual duties not to sell, release, transfer, disclose or disseminate Plaintiff's and Class Members' school student records and personal information,  it was reasonable for Plaintiff and Class Members to believe that such information would be kept private and confidential and would not be disclosed without their authorization.

101.    Defendant College Board's sale, release, transfer, disclosure and dissemination of Plaintiff's and Class Members' school student records and personal information constitutes an unauthorized intrusion or prying into Plaintiff's and Class Members' seclusion, and the intrusion was of a kind that would be highly offensive to a reasonable person.

102.    Defendants acted with a knowing state of mind when they sold, released, transferred, disclosed and disseminated Plaintiff's and Class Members' school student records and personal information.

103.    As a direct and proximate result of the above acts and omissions of Defendant College Board, the school student records and personal information of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages, anguish and suffering.

104.    Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the school student records and personal information sold, released, transferred, disclosed and disseminated by College Board can be viewed and used by unauthorized persons.  Plaintiff and Class Members have no adequate remedy at law for the

injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

### COUNT FIVE
### BREACH OF EXPRESS CONTRACT
#### (On behalf of the Illinois and Illinois Child Subclasses)

105.    Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

106.    Between Illinois fiscal years 2017 and the present, Defendant College Board and the Illinois State Board of Education entered into a series of written contracts that each required College Board to provide the SAT, PSAT 10 and PSAT 8/9 to eligible Illinois students, including Plaintiff and Class Members (the "Express Contract").

107.    As consideration for Defendant College Board providing the SAT, PSAT 10 and PSAT 8/9 to eligible Illinois students, the State of Illinois paid a yearly contract fee to College Board.

108.    The parties to the Express Contract intended Plaintiff and Class Members to directly benefit from the Express Contract, as the purpose of the testing was to determine if students were meeting their educational goals and, if not, to determine what educational supports were needed.

109.    Plaintiff and Class Members are third-party beneficiaries of the Express Contract.

110.    On information and belief, the Illinois State Board of Education fully performed its obligations under the Express Contract.

111.    By unlawfully releasing, transferring, disclosing and disseminating student school records in violation of ISSRA, Defendant College Board breached the Express Contract.

25

112.     As a direct and proximate result of Defendant College Board's breach of the Express Contract, Plaintiff and Class Members sustained actual losses as alleged above.

113.     Defendant College Board's breach of the Express Contract was a direct and legal cause of Plaintiff's and Class Members' injuries and damages as alleged above.

**COUNT SIX**
**ILLINOIS SCHOOL STUDENT RECORDS ACT**
**105 ILCS 10/1, *et seq.***
**(On behalf of the Illinois and Illinois Child Subclasses)**

114.     Plaintiff restates and reallages paragraphs 1 through 65, above, as though fully set forth herein.

115.     As alleged in paragraphs 35 to 40, above, Defendant College Board violated ISSRA by unlawfully releasing, transferring, disclosing and disseminating school student records.

116.     Defendant College Board's violation of ISSRA was willful or, pleaded in the alternative, negligent.

117.     As a direct and proximate result of Defendant College Board's violations of ISSRA, Plaintiff and members of the Illinois and Illinois Child Subclasses have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages.

118.     Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the school student records that College Board unlawfully released, transferred, disclosed and disseminated can be viewed and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or

require College Board to retrieve the school student records from the unauthorized entities to which it was unlawfully released, transferred, disclosed and disseminated.

119. Plaintiff and Illinois Child Subclass Members seek relief under 105 ILCS § 10/9 for the harm they suffered because of Defendant College Board's violations of ISSRA, including actual damages, restitution, injunctive relief and reasonable attorneys' fees and costs.

**COUNT SEVEN**
**RIGHT OF PUBLICITY ACT**
**765 ILCS § 1075/1,** *et seq.*
**(On behalf of the Illinois and Illinois Child Subclasses)**

120. Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

121. Plaintiff and Class Members are persons under the Right of Publicity Act.

122. As alleged in paragraphs 45 to 50, above, Defendant College Board violated the Right of Publicity Act.

123. Defendant College Board's violation of the Right of Publicity Act was willful.

124. As a direct and proximate result of Defendant College Board's willful violations of the Right of Publicity Act, Plaintiff and members of the Illinois and Illinois Child Subclasses have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages.

125. Plaintiff and members of the Illinois and Illinois Child Subclasses seek as monetary relief the greater of: (a) actual damages, profits derived from the unauthorized use of Plaintiff and Subclass Members' identities, or both; or (b) $1,000 for each violation of the Right of Publicity Act.

126. Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff

and Class Members in that the personal information sold by College Board can be viewed and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

127.     Plaintiff and members of the Illinois and Illinois Child Subclasses also seek punitive damages, injunctive relief and the reasonable attorney's fees, costs and expenses relating to this action.

**COUNT EIGHT**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS § 505/1,** *et seq.*
**(On behalf of the Illinois Child Subclass)**

128.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

129.     At relevant times, Defendant College Board knew that Plaintiff and members of the Illinois Child Subclass were under the age of sixteen and, therefore, children as defined by the Children's Privacy Protection Act.

130.     In violation of the Children's Privacy Protection Act, 325 ILCS § 17/10, Defendant College Board sold Plaintiff's and Illinois Child Subclass Members' personal information without parental consent.

131.     Pursuant to 325 ILCS § 17/20, a violation of any provision of the Children's Privacy Protection Act is a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

132.    As a direct and proximate result of Defendant College Board's violations of 325 ILCS § 17/10, Plaintiff and Illinois Child Subclass Members suffered damages, as described above.

133.    Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the personal information sold by College Board can be viewed and used by unauthorized persons.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

134.    Plaintiff and Illinois Child Subclass Members seek relief under 815 ILCS § 505/10(a) for the harm they suffered because of Defendant College Board's willful violations of 325 ILCS § 17/10, including actual damages, restitution, punitive damages, injunctive relief and reasonable attorneys' fees and costs.

## COUNT NINE
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS § 505/1, *et seq.*
### (On behalf the Illinois and Illinois Child Subclasses)

135.    Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

136.    Defendant College Board is a "person" as defined by 815 ILCS § 505/1(c).

137.    Defendant College Board's conduct as alleged herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f).

138.    Defendant College Board's deceptive, unfair and unlawful trade acts or practices, in violation of 815 ILCS § 505/2,  include:

a.   Misrepresenting in Defendant College Board's publications titled "Our Commitment to Student Data Privacy" and "Data Privacy Overview" that it did not sell student data or information;

b.   Making it appear as if participation in Student Search Service was voluntary while proactively engaging in conduct Defendant College Board knew would lead to students' participation, such as:

   i.   "Strongly recommend[ing]" in the Student Answer Sheet Instructions to the SAT, PSAT/NMSQT and PSAT 10 that students answer all of the Student Search Service questions under the false pretense that provision of the information "[g]uide[s] your counselors in helping you plan your future";

   ii.   Directing AP Exam proctors and teachers in a document titled "AP Preadministration Instructions" to "[e]ncourage your students to answer 'Yes'" to the question regarding whether students want to participate in Student Search Service;

   iii.   Directing SAT, PSAT/NMSQT and PSAT 10 exam proctors and teachers in written materials provided by Defendant College Board in connection with the administration of the exams to provide instructions regarding Student Search Service that falsely made it appear as if declining to participate in the service could lead to dire consequences, such as missing out on financial aid opportunities; and

   iv.   Preying on students' hopes and fears by making it appear that providing the information could assist with college acceptance and

financial aid while not providing the information would be detrimental to those goals – when in fact, neither scenario was true; and

c.    Concealing from students that Defendant College Board's true purpose in obtaining the personal information was to sell it to third party organizations in order to increase its already substantial revenues.

d.    Failing to comply with common law and statutory duties pertaining to the sale of Plaintiffs' and Illinois and Illinois Child Subclass Members' personal information, including duties imposed by ISSRA, 105 ILCS § 10/6; the Right of Privacy Act, 765 ILCS § 1075/30; the Children's Privacy Protection Act, 325 ILCS § 17/10; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2(a); and

e.    Omitting, suppressing and concealing the material fact that they did not comply with common law and statutory duties pertaining to the sale of Plaintiff's and Illinois and Illinois Child Subclass Members personal information, including duties imposed by ISSRA, 105 ILCS § 10/6; the Right of Privacy Act, 765 ILCS § 1075/30, the Children's Privacy Protection Act, 325 ILCS § 17/10, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2(a).

139.    Defendant College Board's representations and omissions were material because they were likely to deceive reasonable persons about College Board's use of personal information.

140.    Defendant College Board intended to mislead Plaintiff and Illinois and Illinois Child Subclass Members and induce them to rely on their misrepresentations and omissions.

141.    The above unfair and deceptive practices and acts by Defendant College Board were immoral, unethical, oppressive and unscrupulous.  These acts caused substantial injury to Plaintiff and Illinois and Illinois Child Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to competition.

142.    Defendant College Board acted intentionally, knowingly and maliciously to violate Illinois' Consumer Fraud and Deceptive Business Practices Act and recklessly disregarded Plaintiff's and Illinois and Illinois Child Subclass Members' rights.

143.    As a direct and proximate result of Defendant College Board's unfair, unlawful and deceptive practices and acts, Plaintiff and Illinois and Illinois Child Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages, including from the diminution in value of their personal information.

144.    Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the personal information sold by College Board can be viewed and used by unauthorized persons.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

145.    Plaintiff and Illinois and Illinois Child Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief and reasonable attorney's fees and costs.

## COUNT TEN
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS § 510/1, *et seq.*
### (On behalf the Illinois and Illinois Child Subclasses)

146.     Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

147.     Defendant College Board is a "person" as defined by 815 ILCS § 510/1(5).

148.     Defendant College Board engaged in deceptive trade practices in the conduct of its business in violation of 815 ILCS § 510/2(a), including:

    a.     Advertising goods or services with intent not to sell them as advertised; and

    b.     Engaging in conduct that creates a likelihood of confusion or misunderstanding.

149.     Defendants' deceptive trade practices include:

    a.     Misrepresenting in Defendant College Board's publications titled "Our Commitment to Student Data Privacy" and "Data Privacy Overview" that it did not sell student data or information;

    b.     Making it appear as if participation in Student Search Service was voluntary while proactively engaging in conduct Defendant College Board knew would lead to students' participation, such as:

        i.     "Strongly recommend[ing]" in the Student Answer Sheet Instructions to the PSAT/NMSQT and PSAT 10 that students answer all of the Student Search Service questions under the false pretense that provision of the information "[g]uide[s] your counselors in helping you plan your future";

33

ii.     Directing AP Exam proctors and teachers in a document titled "AP Preadministration Instructions" to "[e]ncourage your students to answer 'Yes'" to the question regarding whether students want to participate in Student Search Service;

iii.    Directing PSAT/NMSQT and PSAT 10 exam proctors and teachers in written materials provided by Defendant College Board in connection with the administration of the exams to provide instructions regarding Student Search Service that falsely made it appear as if declining to participate in the service could lead to dire consequences, such as missing out on financial aid opportunities; and

iv.     Preying on students' hopes and fears by making it appear that providing the information could assist with college acceptance and financial aid while not providing the information would be detrimental to those goals – when in fact, neither scenario was true; and

c.      Concealing from students that Defendant College Board's true purpose in obtaining the personal information was to sell it to third party organizations in order to increase its already substantial revenues.

d.      Failing to comply with common law and statutory duties pertaining to the sale of Plaintiff's and Illinois and Illinois Child Subclass Members' personal information, including duties imposed by ISSRA, 105 ILCS § 10/6; the Right of Privacy Act, 765 ILCS § 1075/30; the Children's Privacy Protection Act, 325 ILCS § 17/10; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2; and

e.    Omitting, suppressing and concealing the material fact that they did not comply with common law and statutory duties pertaining to the sale of Plaintiff's and Illinois and Illinois Child Subclass Members personal information, including duties imposed by ISSRA, 105 ILCS § 10/6; the Right of Privacy Act, 765 ILCS § 1075/30; the Children's Privacy Protection Act, 325 ILCS § 17/10; and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

150.    Defendant College Board's representations and omissions were material because they were likely to deceive reasonable persons about College Board's use of personal information.

151.    The above unfair and deceptive practices and acts by Defendant College Board were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and members of the Illinois and Illinois Child Subclasses that they could not reasonably avoid; this substantial injury outweighed any benefits to competition.

152.    As a direct and proximate result of Defendant College Board's unfair, unlawful and deceptive trade practices, Plaintiff and members of the Illinois and Illinois Child Subclasses have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and non-monetary damages, including from the diminution in value of their personal information.

153.    Unless and until enjoined and restrained by order of this Court, Defendant College Board's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the personal information sold by College Board can be viewed and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for

the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and Class Members or require College Board to retrieve the personal information from the unauthorized entities to which it was sold.

154.    Plaintiff and members of the Illinois and Illinois Child Subclasses seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief and reasonable attorney's fees and costs.

**COUNT ELEVEN**
**INJUNCTIVE RELIEF**
**(On behalf of all Classes)**

155.    Plaintiff restates and realleges paragraphs 1 through 65, above, as though fully set forth herein.

156.    Plaintiff and Class Members have clear and ascertainable rights in need of protection – namely: (a) the right to have Defendant College Board specifically perform the terms of its express contracts; (b) the right to have College Board abide by its obligations under ISSRA; and (c) the right to privacy.

157.    Plaintiff and Class Members have no adequate remedy at law because a legal remedy cannot retrieve the personal information and school student records that Defendant College Board unlawfully sold, released, transferred, disclosed and disseminated to third parties and cannot end the invasion of privacy caused by College Board's conduct.

158.    Plaintiff and Class Members will suffer irreparable harm, as alleged herein, from Defendant College Board if its conduct is not so restrained, requiring injunctive relief.

159.    Plaintiff and Class Members are likely to succeed on the merits because, as alleged herein, Defendant College Board unlawfully sold, released, transferred, disclosed and

disseminated students' personal information and school student records despite being prohibited from doing so.

160.     Plaintiff and Class Members seek injunctive relief: (a) barring Defendant College Board from any further sales of Plaintiff's and Class Members' personal information and school student records; (b) barring College Board from continuing to engage in its unlawful business practices, as alleged herein; and (c) requiring College Board to specifically perform the terms of its express contracts which require the retrieval of all personal information sold to third parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark S., on behalf of himself and as parent and guardian of his minor child, A.S., and on behalf of the Classes, respectfully seeks from the Court the following relief:

a.     Certification of the Classes as requested herein;

b.     Appointment of Plaintiff as Class representative and his undersigned counsel as Class counsel;

c.     Award Plaintiff and members of the proposed Classes damages, including statutory and punitive damages;

d.     Award Plaintiff and members of the proposed Classes equitable, injunctive and declaratory relief, including the enjoining of Defendant College Board from selling students' personal information; from releasing, transferring, disclosing and disseminating school student records; from continuing its unlawful business practices, as alleged herein; and requiring specific performance of its contractual agreements;

e.   Award Plaintiff and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law;

f.   Award Plaintiff and members of the proposed Classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.   Award Plaintiffs and members of the proposed Classes any further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

Dated: December 10, 2019

                                        Respectfully submitted,

                                        /s/ Scott R. Drury
                                        SCOTT R. DRURY

Michael Kanovitz
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312.243.5900
mike@loevy.com
drury@loevy.com