**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK S., on behalf of himself and as parent and Guardian of his minor child, A.S., and on behalf of all other similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:19-cv-08068 |
| | ) | |
| vs. | ) | |
| | ) | The Honorable Martha M. Pacold |
| COLLEGE BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

**THE COLLEGE BOARD'S MEMORANDUM OF LAW IN SUPPORT OF ITS
AMENDED MOTION TO ENFORCE ARBITRATION AGREEMENTS AND STAY
PROCEEDINGS PURSUANT TO 9 U.S.C. § 3**

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ...................................................................................................................1

ARGUMENT .......................................................................................................................6

    I.     The Parties Formed An Agreement to Arbitrate.................................................8

    II.    The Parties Delegated Threshold Questions of Arbitrability To The Arbitrator...10

    III.   There Is No Basis for Plaintiff to Resist Arbitration. ...........................................11

         A.    This Dispute Is Covered By the Arbitration Agreements.........................11

         B.    The Arbitration Agreements Are Enforceable..........................................12

         C.    A.S.'s Age Does Not Render the Arbitration Agreements Unenforceable. ...................................................................................................15

CONCLUSION..................................................................................................................17

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ali v. Vehi-Ship, LLC*,
  2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ...................................................7, 10

*Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*,
  188 F. Supp. 3d 696 (N.D. Ill. 2016) ..............................................................7, 10

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ..............................................................................................7

*Arthur J. Rogers Co. v. Remarc Chem. Corp.*,
  2000 WL 1810078 (N.D. Ill. Dec. 8, 2000) .........................................................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ..............................................................................................7

*Awuah v. Coverall N. Am., Inc.*,
  554 F.3d 7 (1st Cir. 2009) ...................................................................................10

*Batiz v. Carnival Corp.*,
  915 F. Supp. 2d 231 (D.P.R. 2012) .....................................................................13

*Biederman v. O'Connor*,
  7 N.E. 463 (Ill. 1886) ..........................................................................................16

*Bloom v. ACT, Inc.*,
  No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018) ..........................................15, 16

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .............................................................................10

*Brown v. Luxottica Retail N. Am. Inc.*,
  2010 WL 3893820 (N.D. Ill. Sept. 29, 2010) ......................................................13

*Chevron Corp. v. Ecuador*,
  795 F.3d 200 (D.C. Cir. 2015) .............................................................................10

*Clemins v. GE Money Bank*,
  2012 WL 5868659 (E.D. Wis. Nov. 20, 2012) .....................................................15

*Contec Corp. v. Remote Solution Co.*,
  398 F.3d 205 (2d Cir. 2005) ................................................................................10

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
  835 F.3d 1195 (10th Cir. 2016) ........................................................................12

*D.B. Corkey Co. v. Koplin*,
  531 N.E.2d 1044 (Ill. App. Ct. 1988) ...............................................................9

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
  885 F. Supp. 2d 894 (S.D. Ill. 2012).........................................................16, 17

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
  621 F. App'x 488 (9th Cir. 2015) .....................................................................16

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)............................................................................................7

*DeJohn v. The .TV Corp.*,
  245 F. Supp. 2d 913 (N.D. Ill. 2003) ...........................................................8, 10

*Dish Network L.L.C. v. Ray*,
  900 F.3d 1240 (10th Cir. 2018) ........................................................................10

*Doe v. The College Board*,
  2020 WL 882019 (S.D.N.Y. Feb. 24, 2020)....................................11, 12, 15, 16

*Durrett v. ACT, Inc.*,
  310 P.3d 1047 (Haw. Ct. App. 2011) ..........................................................15, 16

*Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*,
  2017 WL 9287091 (S.D. Ill. Apr. 7, 2017).......................................................13

*Fallo v. High–Tech Inst.*,
  559 F.3d 874 (8th Cir. 2009) ............................................................................10

*Feldheim v. Sims*,
  760 N.E.2d 123 (Ill. App. Ct. 2001) ..................................................................7

*Freund v. UBS Fin. Servs., Inc.*,
  141 F. Supp. 3d 797 (N.D. Ill. 2015) ................................................................12

*Gore v. Alltel Commc'ns, LLC*,
  666 F.3d 1027 (7th Cir. 2012) ..........................................................................11

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ..............................................................................8

*Harden v. Am. Airlines*,
  178 F.R.D. 583 (M.D. Ala. 1998)......................................................................17

*Kinkel v. Cingular Wireless LLC*,
  857 N.E.2d 250 (Ill. 2006) ............................................................15

*Koveleskie v. SBC Capital Markets, Inc.*,
  167 F.3d 361 (7th Cir. 1999) ........................................................14

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011)..........................................................................7

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006)...........................................................12

*Landmark Properties, Inc. v. Architects Int'l-Chicago*,
  526 N.E.2d 603 (Ill. Ct. App. 1988) ...............................................8

*Loewen v. Lyft, Inc.*,
  129 F. Supp. 3d 945 (N.D. Cal. 2015) ..........................................14

*Maness v. Santa Fe Park Enterprises, Inc.*,
  700 N.E.2d 194 (Ill. App. Ct. 1998) .............................................10

*McGee v. Armstrong*,
  941 F.3d 859 (6th Cir. 2019) ........................................................10

*Melena v. Anheuser-Busch, Inc.*,
  847 N.E.2d 99 (Ill. 2006) ................................................................8

*Miracle-Pond v. Shutterfly, Inc.*,
  2020 WL 2513099 (N.D. Ill. May 15, 2020) ...................................9

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................7

*Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
  410 F. Supp. 3d 882 (N.D. Ill. 2019) ...........................................10

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
  687 F.3d 671 (5th Cir. 2012) ........................................................10

*Qualcomm Inc. v. Nokia Corp.*,
  466 F.3d 1366 (Fed. Cir. 2006)....................................................10

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)..........................................................................7

*Sanchez v. CleanNet USA, Inc.*,
  78 F. Supp. 3d 747 (N.D. Ill. 2015) ...............................12, 13, 14

*Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*,
    957 F. Supp. 150 (N.D. Ill. 1997) ...................................................................15

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)...........................................................................12

*Swanson v. U-Haul Int'l, Inc.*,
    2014 IL App (2d) 140227-U (unpublished).....................................................8

*Terminix Int'l Co. v. Palmer Ranch LP*,
    432 F.3d 1327 (11th Cir. 2005) ...................................................................10

*Valentine v. Wideopen W. Fin., LLC*,
    2012 WL 1021809 (N.D. Ill. Mar. 26, 2012)...........................................13, 14

*Watson Wyatt & Co. v. SBC Holdings, Inc.*,
    513 F.3d 646 (6th Cir. 2008) ......................................................................12

*Willis v. Captain D's, LLC*,
    2015 IL App (5th) 140234-U (unpublished)....................................................8

*WMS Gaming, Inc. v. IGT*,
    31 F. Supp. 3d 974 (N.D. Ill. 2014) ............................................................12

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    13 F.3d 330 (10th Cir. 1993) ......................................................................12

**Statutes**

9 U.S.C. § 3...................................................................................................1, 6

**Other Authorities**

Rule 14, *AAA Consumer Rules* (2016), *available at*
    http://adr.org/sites/default/files/Consumer%20Rules.pdf .......................................4

5 *Williston on Contracts* § 9:14 (4th ed.)....................................................................16

About Your Data, College Board.org,
    https://studentsearch.collegeboard.org/about-your-data ........................................6

Accessing and Paying Your Invoice, College Board.org,
    https://apcentral.collegeboard.org/ap-coordinators/accessing-and-paying-your-
    invoice...................................................................................................5

Bulk Registration and Pre-ID Label Tool, CollegeBoard.org,
    https://bulkreg.collegeboard.org/ ...................................................................6

College Board Programs, CollegeBoard.org,
    https://parents.collegeboard.org/college-board-programs .......................................................12

Exam Fees, CollegeBoard.org, https://apcentral.collegeboard.org/ap-
    coordinators/exam-ordering-fees/exam-fees...............................................................................5

Fees, Invoicing, and Payment for 2020 Exams, CollegeBoard.org,
    https://apcoronavirusupdates.collegeboard.org/coordinators/fees-invoices-
    payment....................................................................................................................................5

The College Board is a nonprofit organization that administers standardized tests, including the SAT, the PSAT, and Advanced Placement (AP) exams to millions of students around the globe every year. When test takers register for or take part in these College Board programs, they agree to abide by terms and conditions which allow the College Board to ensure that exams are administered fairly, outcomes are reliable, and disputes are resolved quickly and appropriately. Plaintiff Mark S. brings this action on behalf of his minor child, A.S., who has taken several exams offered by the College Board. In sitting for those exams and accepting benefits from the College Board, A.S. agreed, on many occasions, to submit disputes like this one—relating to "use of test taker data"—to binding arbitration.

The parties' written arbitration agreements should be enforced, and the action should be stayed under the Federal Arbitration Act, 9 U.S.C. § 3. First, any challenge to the arbitrability of this dispute belongs with the arbitrator and not this Court: the arbitration agreements delegate such questions to the arbitrator. In any event, regardless of who decides, the arbitration agreements are enforceable. Finally, A.S. has not disclaimed her agreements with the College Board and cannot disclaim the arbitration agreements while simultaneously accepting the benefits of her agreements.[1]

## BACKGROUND

This action challenges the College Board's purported use of data provided when test taker A.S. registered for and took College Board exams. *See, e.g.*, Am. Compl. ¶¶ 1, 15, 27, 58. Each of the Amended Complaint's twelve counts challenges the College Board's use of test taker data, specifically the College Board's purported sharing of information with third parties. Am. Compl. ¶¶ 100, 111, 117, 127, 138, 152, 158-59, 169-70, 176, 187, 191, 198.

---

[1] By filing this motion, the College Board does not waive any arguments or defenses to Plaintiff's Amended Complaint, including any arguments under Rule 12 of the Federal Rules of Civil Procedure.

The Amended Complaint alleges that the College Board shares data with third parties in two ways. First, as in the original complaint, the Amended Complaint alleges that the College Board improperly sold A.S.'s data through Student Search. For nearly half a century, Student Search has afforded test takers the opportunity to provide limited information (for example, name, birthdate, and expected graduation date) to colleges, universities, scholarship organizations, and other educational organizations, in order to receive information to assist in their college and scholarship search. *See* Am. Compl. ¶¶ 32-39. Second, Plaintiff alleges the College Board shared information with third parties by providing "hashed" data to third-party advertisers as disclosed in the College Board's privacy policies. Am. Compl. ¶ 29.

Plaintiff asserts that her personal information was shared with the College Board only "[i]n connection with the PSAT 8/9 and AP Exams," Am. Compl. ¶ 58, and seeks to represent a class of individuals whose information was provided to the College Board "in connection with a Standardized Test." Am. Comp. ¶¶ 83-86.

A.S. sat for seven exams—five AP exams and two PSAT 8/9 exams—between October 2018 and May 2020. Am. Compl. ¶¶ 52, 56-57; Ex. A (A.S. Student Profile Rep't) at 2. She opted into Student Search on May 7, 2019. Ex. B (5/7/2019 A.S. AP Answer Sheet). Prior to the May 2020 AP exams, the College Board removed A.S. from the Student Search program because of her objection in this lawsuit to participating in Student Search.[2]

AP Exams. A.S. took AP exams on three separate dates in May 2019. Exs. B-D (AP Answer Sheets). Months before the exams, the College Board sent A.S.'s school copies of the *2018-19 AP Bulletin for Students and Parents* ("*Bulletin*") for each registered test taker, with

---

[2] A.S. was opted out on May 9, 2020. Counsel for the College Board mistakenly understood that A.S. had been opted out prior to the College Board's filing on May 8, 2020 (Dkt. 44), but the opt-out process was not complete until May 9. Counsel apologize for the error. The fact remains that A.S. did not sit for any exam after filing her lawsuit while remaining enrolled in Student Search.

instructions that the school distribute the *Bulletin* well in advance of the exams. Ex. E (*2018-2019 AP Coordinator Manual* excerpts) at 8, 11 (instructing exam coordinators to, months before exam administration, "[d]istribute the [*Bulletin*] to all AP students and encourage them to read it, as students agree to the terms therein on exam day," and to "[e]ncourage students to share the bulletin with their parents"); Ex. F, Decl. of Laura Hardy ¶ 2 (*Bulletins* delivered to A.S.'s school Dec. 3, 2019). Neither the original complaint nor the Amended Complaint contests that A.S. received the *Bulletin* well before taking the May 2019 exams. *See* Am. Compl. ¶¶ 55-56.

The *Bulletin*, on its first page, notified test takers that it contained "important information about the AP Exams" and that, "[o]n exam day, you'll be asked to sign a statement on your answer sheet indicating you understand and agree to the policies and procedures in this publication." Ex. G (*2018-19 Bulletin*) at 1. A.S. was given ample time to review the *Bulletin* and to discuss with a parent. *See* Ex. E (*2018-2019 AP Coordinator Manual* excerpts) at 11.

The *Bulletin* contained an arbitration agreement that provides that:

[A]ll student disputes … that relate in any way to registering for or taking part in a College Board program such as AP or Pre-AP, including but not limited to … the use of test taker data shall exclusively be resolved by a single arbitrator through binding, individual arbitration administered by the American Arbitration Association ("AAA"), under the AAA Consumer Arbitration Rules in effect at the time a request for arbitration is filed with the AAA. Copies of the AAA Rules can be located at www.adr.org.

Ex. G (*2018-19 Bulletin*) at 5. Test takers agreed to waive their "right to have [their] dispute heard by a judge or jury." *Id*. The agreement also provides that it is governed by "the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 et seq." *Id.*

The parties agreed to have their disputes administered under the AAA Consumer Arbitration Rules. Those rules give the arbitrator the authority "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" as well "the power

to determine the existence or validity of a contract of which an arbitration clause forms a part." Rule 14, *AAA Consumer Rules* (2016), http://adr.org/sites/default/files/Consumer%20Rules.pdf.

Before taking each of her three May 2019 AP exams, A.S. signed a separate answer sheet acknowledging that she was aware of, and agreed to follow, the policies and procedures in the *Bulletin* to maintain the security of the exam and the validity of her score. Exs. B-D (AP Answer Sheets). A.S. also asked the College Board to send her AP scores to a university, and the College Board did so. Ex. A (Student Profile Rep't) at 2.

In September 2019, A.S. created an online account for the "My AP" program. Before accessing the "My AP" program website, A.S. was presented with the program terms and conditions, which contained the same arbitration agreement in the *Bulletin*; A.S. was then asked to and did affirm "I have read and accept the terms of service." *See* Ex. H, Decl. of James A. Clewley Jr., ¶¶ 2-7; Ex. I (full "My AP" terms and conditions) at 10.

A.S. took two additional AP exams in May 2020. Ex. A (A.S. Student Profile Rep't) at 2.[3] Prior to those exams, the College Board delivered a *Bulletin* containing the same arbitration agreement to A.S., according to the same process described above. Ex. J (*2019-20 Bulletin*) at 6; Ex. K (2019-20 *AP Coordinator Manual* excerpts) at 14; Ex. F, Hardy Decl. ¶ 3. A.S. has not denied that she received the *2019-20 Bulletin* well before taking the exams.

The May 2020 AP exams were administered online, due to the Covid-19 pandemic. One week before the exams, the College Board emailed A.S. the AP Exam Terms and Conditions, encouraging her to review them in advance of test day, when she would be asked to acknowledge her consent before proceeding with the exam. Ex. H, Clewley Decl. ¶¶ 8-10. Similar to prior

---

[3] The AP Computer Science Principles end-of-year exam did not occur due to the Covid-19 pandemic.

agreements, the terms and conditions contained an arbitration agreement providing that "[a]ll disputes … that relate in any way to registering for or taking the AP Exam, including but not limited to … the use of your data … shall exclusively be resolved by a single arbitrator through binding, individual arbitration." *Id.* ¶¶ 10-12; Ex. L (2020 AP Terms and Conditions) at 7. The College Board's email also instructed A.S. to follow a link to an interactive demo. Ex. H, Clewley Decl. ¶¶ 9, 13. Like on exam day, the demo began with a page on which test takers acknowledged that they "agree[d] to the Terms and Conditions"—with "Terms and Conditions" hyperlinked to the AP Terms and Conditions. *Id.* ¶¶ 14-16.[4] On exam day, to access the exams, A.S. clicked a box stating "I agree to the Terms and Conditions." *Id.* ¶ 17; Am. Compl. ¶ 48.

The College Board does not collect fees for AP exams directly from students and does not invoice schools until after tests are administered.[5] Am. Compl. ¶ 41. Schools have complete discretion in determining when and how to collect exam payment,[6] and can elect to use their own funds to pay the College Board for exams, rather than collecting fees from students. *See* Ex. G (*2018-19 Bulletin*) at 2. The College Board does not require registered students to take exams and invoices schools a small cancellation fee for unused exams, rather than the full exam fee. *See id.* For May 2020 exams, due to the changes in the exam in response to the Covid-19 emergency, the College Board is not collecting fees for unused exams.[7]

---

[4] College Board's Counsel also directed A.S. to the arbitration agreement in response to questions from A.S.'s counsel. Ex. M (5/12/2020 J. Stonecipher Letter). A.S.'s counsel alleged that "[b]y taking the upcoming 2020 AP Exams, neither [A.S.] nor any putative class member agrees to arbitrate …" Ex. N (5/12/2020 S. Drury Letter).

[5] *See* Accessing and Paying Your Invoice, https://apcentral.collegeboard.org/ap-coordinators/accessing-and-paying-your-invoice.

[6] Exam Fees, https://apcentral.collegeboard.org/ap-coordinators/exam-ordering-fees/exam-fees.

[7] *See* Fees, Invoicing, and Payment for 2020 Exams, https://apcoronavirusupdates.collegeboard.org/coordinators/fees-invoices-payment.

PSAT 8/9. A.S. took the PSAT 8/9 in October 2018 and April 2019. Exs. O-P (PSAT 8/9 Answer Sheets.)[8] The College Board does not offer Student Search in connection with the PSAT 8/9; thus A.S. was not asked to participate nor did she. *See id.* (containing no opt in for Student Search).[9] The Amended Complaint does not (and cannot) allege that PSAT 8/9 test takers participate in Student Search, or that information provided in connection with PSAT 8/9 administrations is shared with third-party advertisers. *See* Am. Compl. ¶ 37.

The PSAT 8/9 was also administered pursuant to an arbitration agreement stating that:

> [A]ll disputes … that relate in any way to registering for or taking the PSAT 8/9, including but not limited to … use of test taker data, shall exclusively be resolved by a single arbitrator through binding, individual arbitration administered by the American Arbitration Association ("AAA"), under the AAA Consumer Arbitration Rules ...

Ex. Q (*2018-19 PSAT 8/9 Student Guide*) at 7. Once again, in neither the complaint nor the Amended Complaint did A.S. allege that she did not receive the *Student Guide*. During PSAT 8/9 administrations, A.S. signed answer sheets agreeing to "follow the test guidelines and regulations." Exs. O-P (PSAT 8/9 Answer Sheets).

## ARGUMENT

The Federal Arbitration Act ("FAA") requires that, when an issue is "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

---

[8] A.S. asserts that, in connection with the PSAT 8/9, her school used "bulk registration," a process through which schools provide certain basic information in advance of the exam to allow the College Board to print labels to be applied to student answer sheets, eliminating the need for students to fill in this information on test day. Am. Compl. ¶ 54. *See* Bulk Registration and Pre-ID Label Tool, https://bulkreg.collegeboard.org/.

[9] *See also* About Your Data, https://studentsearch.collegeboard.org/about-your-data.

proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (citation omitted). This policy requires courts to "rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and to resolve "any doubts concerning the scope of arbitrable issues … in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). In Illinois, arbitration is also "a favored method of settling disputes," as it "allows for the final disposition of disputes in an easier, more expeditious and less expensive manner." *Feldheim v. Sims*, 760 N.E.2d 123, 129 (Ill. App. Ct. 2001).

Typically, "whether the parties agreed to arbitrate is to be decided by the court." *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 649 (1986). But "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Questions of arbitrability are therefore delegated to the arbitrator when there is "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. *Ali v. Vehi-Ship, LLC*, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017).

When, as here, the parties' agreement incorporates the AAA Consumer Arbitration Rules, which empower an arbitrator to decide questions of arbitrability, the parties have clearly and unmistakably indicated their intent to delegate such issues to an arbitrator. *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016).

For all of the reasons set forth below, the Court should enforce the parties' arbitration agreement.

## I.      The Parties Formed An Agreement to Arbitrate.

An agreement "requires only a manifestation of mutual assent." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (quoting *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004)). Parties' "objective conduct, not their subjective intent, determines whether [they] agreed to mandatory arbitration." *Id.* at 712. Thus, even if a party subjectively did not intend to agree to arbitrate, if the party manifested an intent to agree through objective conduct, the party is bound. *Id.* "[T]he usual maxim of contract law that a party to an agreement is charged with knowledge of and assent to the agreement signed" applies equally to arbitration agreements. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 106, 108 (Ill. 2006) (a party "consents to arbitration by signing the form or by manifesting assent in another way, such as by performance of the contract. That the consumer did not read or understand the arbitration clause does not prevent the consumer from consenting to it." (citation omitted)). This is equally true for electronic contracts. *DeJohn v. The .TV Corp.*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003).

A.S. agreed to arbitrate all disputes relating in any way to use of data provided in connection with College Board exams on at least *eight different occasions* (five AP exams, two PSAT 8/9 exams, and "My AP").

- As A.S. has not disputed, she received the *Bulletin* in advance of both the May 2019 and May 2020 AP exams. A.S. agreed to arbitration by sitting for AP exams (five times) and accepting benefits from the College Board (including scores, and sending score reports to a university). Similarly, A.S. sat for the PSAT 8/9 (twice) and accepted those benefits. *See generally Landmark Properties, Inc. v. Architects Int'l-Chicago*, 526 N.E.2d 603, 606 (Ill. Ct. App. 1988) (enforcing arbitration clause against a party because he had "indicate[d] his assent to [a contract's] terms and become bound by its provisions" through "his acts and conduct"); *Swanson v. U-Haul Int'l, Inc.*, 2014 IL App (2d) 140227-U, ¶¶ 39-40 (unpublished) (parties indicated assent to arbitration agreement by renting a truck after seeing the contract).

- Further, for the May 2019 AP exams, A.S. signed answer sheets (three times, on three different dates) acknowledging that she had received the *Bulletin* and agreed to follow policies and procedures it contained. *See Willis v. Captain D's, LLC*, 2015 IL App (5th) 140234-U, ¶ 15 (unpublished) (enforcing arbitration agreement because

"plaintiff's signature, under Illinois law, is evidence of her acceptance of the contract's terms."). Prior to PSAT 8/9 exams, A.S. also signed answer sheets agreeing to "follow the test guidelines and regulations."

- In September 2019, A.S. again assented to arbitration when she affirmed "I have read and accept the terms of service" in registering for My AP. *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (an "agreement is formed when a website user clicks a button or checks a box that explicitly affirms that the user has accepted the terms after having the opportunity to scroll through the terms posted on the website, and this type of agreement is generally enforced").

- After receiving ample notice of the terms and conditions, A.S. again clicked a box, accepting hyperlinked terms and conditions containing an arbitration agreement (twice) in taking the May 2020 AP exams. *Id.*

Thus, A.S., by her objective conduct, agreed to mandatory individual arbitration of her claims.

The Amended Complaint does not dispute these facts—despite the fact that Plaintiff amended the complaint after learning about the College Board's arbitration motion. In fact, Plaintiff rightly asserts that an enforceable contract existed between her and the College Board. Plaintiff, however, seeks to obtain the benefits of the agreement without its obligations by recharacterizing her prior "breach of express contract" claim (Compl. ¶¶ 66-72) as a breach of an "implied contract," which she asserts excludes any arbitration agreement (Am. Compl. ¶¶ 41-43, 107-13). A.S. now alleges her contract with the College Board was complete at the moment A.S. paid her school to take AP exams, and that the College Board could not later "unilaterally alter" that agreement. Am. Compl. ¶¶ 42-43. But the timing and mechanism of payment is a distraction from the actual issue: whether there was an agreement to arbitrate this dispute. Whether payment to the school created an "implied contract"[10] does not alter the fact that the parties *mutually*

---

[10] Plaintiff acknowledges she paid *her school*, not the College Board. (*See* Am. Compl. ¶ 41.) A.S.'s school acted on its own behalf and retained discretion in collecting payment from students. The College Board later invoiced the school, not A.S., and received no fee for A.S.'s exams until after she took them. *See supra* 5. So there was no interaction or meeting of the minds between the College Board and A.S. when she paid her school, and therefore no contract. *See D.B. Corkey Co. v. Koplin*, 531 N.E.2d 1044, 1048 (Ill. App. Ct. 1988). Despite Plaintiff's conclusory allegation (Am. Compl. ¶ 41), the school

assented to arbitration agreements, as explained above. These agreements superseded any preexisting implied contract. *DeJohn*, 245 F. Supp. 2d at 918 ("[A]ny implied contract … is negated by [plaintiff's] clear agreement to be bound by the written [online] Agreement"); *Maness v. Santa Fe Park Enterprises, Inc.*, 700 N.E.2d 194, 200 (Ill. App. Ct. 1998) ("[A]n implied contract cannot coexist with an express contract on the same subject.").

## II. The Parties Delegated Threshold Questions of Arbitrability To The Arbitrator.

Any challenge to the interpretation, enforceability, or existence of the arbitration agreement—or whether it covers this dispute—is for the arbitrator, not this Court, to decide. Questions of arbitrability may be delegated to the arbitrator if there is clear and unmistakable evidence of this delegation. *Ali*, 2017 WL 5890876, at *3.

Here, the parties clearly and unmistakably agreed to delegate questions of arbitrability to the arbitrator by agreeing that arbitration would be governed by the AAA Consumer Arbitration Rules. The consensus among federal courts, including every appellate court to address the question, is that "incorporating AAA Rules within a contract . . . constitutes clear and unmistakable evidence to delegate arbitrability to arbitrators." *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019) (collecting cases) (appeal filed Oct. 23, 2019); *Allscripts Healthcare,* 188 F. Supp. 3d at 701.[11]

---

therefore plainly was not the College Board's "agent." *See Arthur J. Rogers Co. v. Remarc Chem. Corp.*, 2000 WL 1810078, at *4 (N.D. Ill. Dec. 8, 2000).

[11] *See Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006), *abrogated on other grounds* by *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019); *see also Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015) (incorporation by reference of the rules of a U.N. Commission was clear and unmistakable evidence that the parties delegated questions of arbitrability to the arbitrator); *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (incorporation by reference of the

Because the arbitration agreements incorporated the AAA Consumer Rules, they contain clear and unmistakable evidence that questions of arbitrability are reserved for the arbitrator.

As the parties agreed to arbitrate and delegated questions of arbitrability to the arbitrator, the Court need not reach any other issues. The arbitration agreements should be enforced.

### III. There Is No Basis for Plaintiff to Resist Arbitration.

As explained above, any challenges to the arbitration agreements must be referred to the arbitrator. If the Court chooses to address the issues, however, the arbitration agreements are enforceable and cover this dispute. Indeed, the Southern District of New York recently enforced a similar arbitration agreement in an action brought by SAT test takers. *Doe v. The College Board*, 2020 WL 882019 (S.D.N.Y. Feb. 24, 2020).

### A. This Dispute Is Covered By the Arbitration Agreements.

The arbitration agreements between A.S. and the College Board require that all disputes "that relate in any way" to "registering for or taking part in a College Board program," or "registering for or taking" an exam, including the "use of test taker data … shall exclusively be resolved through binding, individual arbitration." "Such broad language necessarily create[s] a presumption of arbitrability" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033-34 (7th Cir. 2012). This dispute relates only to use of test taker data provided "[i]n connection with the PSAT 8/9 and AP Exams"—whether allegedly used in Student Search or provided to third-party advertisers—and is covered by the arbitration agreements.[12] Am. Compl. ¶¶ 58, 83-86.

---

AAA Employment Arbitration Rules, which provide that questions of arbitrability are for the arbitrator, was clear and unmistakable evidence that the parties delegated such questions to the arbitrator).

[12] The Amended Complaint includes allegations about mechanisms through which information is purportedly conveyed to the College Board: (1) during registration for and administration of exams (including "bulk registration"); (2) during set up of online College Board accounts; and (3) through visits to the College Board website. Allegations specific to A.S., however, are limited to data provided "[i]n

Indeed, each of the four arbitration agreements A.S. entered in 2019 in connection with AP exams and "My AP" encompasses this entire dispute. They cover disputes that "relate in any way to registering for or taking part in a College Board program" and are not restricted to claims relating to the particular agreement or any time period. AP, PSAT 8/9, and Student Search are all College Board Programs.[13] Arbitration agreements which are "not limited to disputes arising out of a particular agreement" or to a particular time cover disputes that arose prior to the agreement. *Freund v. UBS Fin. Servs., Inc.*, 141 F. Supp. 3d 797, 807 (N.D. Ill. 2015).[14]

### B. The Arbitration Agreements Are Enforceable.

The arbitration agreements A.S. assented to are enforceable. They are neither procedurally nor substantively unconscionable. In Illinois, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 753 (N.D. Ill. 2015).

The agreements are not procedurally unconscionable. Indeed, the Southern District of New York recently rejected procedural unconscionability arguments raised against the College Board's arbitration agreement with students taking the SAT exam. *Doe v. The College Board*, 2020 WL 882019, at *5. Procedural unconscionability occurs "where a term is so difficult to

---

connection with the PSAT 8/9 and AP Exams." Am. Compl. ¶ 58. Specifically, A.S. alleges she provided information in connection with those exams (*id.*), and that her school provided information through "bulk registration" "[i]n connection with the fall 2018 PSAT 8/9" (*id.* at ¶ 54). All of A.S.'s claims therefore "relate" to "registering for or taking part in a College Board program," including the "use of test taker data." If any portion of the Amended Complaint were not covered by the arbitration agreements, the entire action should still be stayed given the extensive overlap in Plaintiff's claims, the risk of inconsistent decisions, and the waste of judicial resources that will occur if this case proceeds piecemeal. *See WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 978 (N.D. Ill. 2014).

[13] College Board Programs, https://parents.collegeboard.org/college-board-programs.

[14] *See also In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016) (agreement covering disputes that "*in any way relate to*" goods or services "encompassed Plaintiffs' … claim even though it arises out of events that predated the agreement"); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008); *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993).

find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Sanchez*, 78 F. Supp. 3d at 754 (citation omitted). A.S. had more than sufficient opportunity to read the arbitration agreement, which she was provided and instructed to read on numerous occasions. *See Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, 2017 WL 9287091, at *4 (S.D. Ill. Apr. 7, 2017) (no procedural unconscionability when a party had two months to review a contract's terms before executing it); *cf. Batiz v. Carnival Corp.*, 915 F. Supp. 2d 231, 235 (D.P.R. 2012) (enforcing venue selection clause against minors when minors had an opportunity to read a contract in advance of boarding a cruise ship and, upon boarding, were required to acknowledge they had received and accepted the contract).

The *Bulletin* instructed test takers—on its first page—that it contained "important information" the test taker needed to know. Exs. J & G (noting, "[o]n exam day, you'll be asked to sign a statement on your answer sheet indicating you understand and agree to the policies and procedures in this publication."). The arbitration clause appeared on pages five and six of the document, in the same readable font used throughout (under the header "Disputes"). Ex. G at 5; Ex. J at 6. The clause was far from "buried." *See Valentine v. Wideopen W. Fin., LLC,* 2012 WL 1021809, at *3 (N.D. Ill. Mar. 26, 2012) (arbitration provision on page 26 of a 30-page document was not buried and not procedurally unconscionable); *Sanchez*, 78 F. Supp. 3d at 755 (arbitration provision was "no more 'buried' than any other provision . . . as the font size and theme remain[ed] the same throughout the 41-page document"); *Brown v. Luxottica Retail N. Am. Inc.,* 2010 WL 3893820, at **3–4 (N.D. Ill. Sept. 29, 2010) (arbitration clause in the middle of a 51-page handbook was not "buried" as it was in regular font, single-spaced, and easily readable). The PSAT 8/9 *Student Guide* similarly notified students, on its first substantive page,

13

that it contained terms and conditions test takers "need to know," and the arbitration agreement appeared on page five in the same font used throughout. Ex. Q (*Student Guide*) at 7.

The arbitration agreements A.S. assented to online in connection with the May 2020 AP exams and "My AP" were similarly clear and accessible. A.S. was notified well in advance that she would be asked to agree to the May 2020 AP Exam Terms and Conditions. *See* Clewley Decl. ¶ 10. At the top of the terms and conditions, bold text notified students that "[a]ll disputes between you and College Board will be resolved through binding arbitration in accordance with Section 8." Ex. L at 1. And Section 8, titled "Arbitration of Disputes," was in regular font and easily readable. *Id.* at 7. Similarly, the arbitration agreement in the "My AP" terms and conditions appeared in the same easy-to read text as the rest of the document, under the header "Disputes." Ex. I at 10. These agreements do not approach procedural unconscionability. *See Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015) (rejecting argument that agreement was unconscionable because it was "on page 22 of a 32 page agreement accessed from a hyperlink on a website").

The fact that test takers are required to agree to the terms and conditions does not render the arbitration agreement procedurally unconscionable. *See Sanchez*, 78 F. Supp. 3d at 754. "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it' deal." *Id.* (quoting *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 367 (7th Cir. 1999)); *see also Valentine*, 2012 WL 1021809, at *4 (contracts can be enforceable "even though the terms including the arbitration clause and the class action waiver therein, are nonnegotiable") (citation omitted)). Thus, "disparity in the size of the parties entering into the agreement . . . without some wrongful use of that power is not enough to render an arbitration agreement unenforceable." *Koveleskie*, 167 F.3d at 367.

14

Moreover, the arbitration agreements are not substantively unconscionable. Once again, the Southern District of New York rejected a substantive unconscionability challenge to the College Board's arbitration agreement with SAT exam takers. *Doe v. The College Board*, 2020 WL 882019, at *6. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006). Here, the terms on their face are fair and reasonable, and arbitration will be conducted before the AAA, which courts recognize as a suitable alternative forum. *See, e.g.*, *Clemins v. GE Money Bank*, 2012 WL 5868659, at *6 (E.D. Wis. Nov. 20, 2012) (rejecting argument that arbitration agreement was unconscionable because it required arbitration before the AAA). Further, the College Board has agreed to arbitrate in Chicago and to pay the fees and expenses incurred in connection with the arbitration, regardless of its outcome. *See* Ex. R at 2.

### C. A.S.'s Age Does Not Render the Arbitration Agreements Unenforceable.

Arbitration agreements are enforceable even if one of the parties is a minor. In fact, courts have enforced the College Board's arbitration agreement and similar arbitration agreements in the standardized testing context. *Doe v. The College Board*, 2020 WL 882019, at *6 (staying litigation when minors agreed to arbitrate claims when registering for the SAT); *Bloom v. ACT, Inc.*, No. 2:18-cv-06749-GW (C.D. Cal. Dec. 4, 2018), ECF No. 86 (staying litigation when minor agreed to arbitrate claims when registering for the ACT); *Durrett v. ACT, Inc.*, 310 P.3d 1047 (Haw. Ct. App. 2011) (same); *see also Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150 (N.D. Ill. 1997) (enforcing arbitration against minor).

Under Illinois law, a minor cannot accept benefits under a contract while simultaneously disaffirming conditions that she does not like. A minor may not "inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit"; so, '[i]f an infant enters into any contract subject to conditions or stipulations, the minor cannot take the

benefit of the contract without the burden of the conditions or stipulations.'" *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (enforcing venue selection clause against minors who had not effectively disaffirmed contract) (citation omitted); *see Biederman v. O'Connor*, 7 N.E. 463, 467 (Ill. 1886); 5 *Williston on Contracts* § 9:14 (4th ed.).

If a minor does not void a contract containing an arbitration agreement *in its entirety*, she is required to comply with the contract's arbitration provision. For example, the Central District of California recently compelled test takers to arbitrate their claims against the company that administers the ACT. *See Bloom*, No. 2:18-cv-06749-GW, ECF No. 86, at **8–9. The plaintiffs had "not submitted sufficient evidence of their intent to disaffirm the relevant terms and conditions *in their entirety*" and, "[a]t earlier points in th[e] litigation" had "indicated that they disaffirm something *less* than the terms and conditions as a whole, despite the fact they [later] argue[d] for broader disaffirmance." *Id.*; *see also Durrett*, 310 P.3d 1047, at *9 (minor plaintiff was required to arbitrate when she only contested entering into arbitration provision and did not submit evidence that she had voided the entire agreement).

A.S. has not disaffirmed her contracts with the College Board. Instead, she has accepted benefits under the agreements—such as sitting for exams and receiving scores—and, although the College Board has been seeking to enforce the arbitration agreements for over three months, A.S. continues to accept benefits by taking additional exams and seeking scores provided by the College Board. *See Doe v. The College Board*, 2020 WL 882019, at *4 ("[A] minor is not entitled to retain an advantage from a transaction which he repudiates."); *Bloom*, No. 2:18-cv-06749-GW, ECF No. 86, at *9 ("Though Plaintiffs argue that Defendant sending score reports … does not somehow constitute a contractual benefit of the terms and conditions, the Court would disagree"). Accepting those benefits binds A.S. to the arbitration clause. *See C.M.D. ex rel. De*

16

*Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract," and therefore were bound by venue selection clause); *E.K.D.*, 885 F. Supp. 2d at 899 (same); *See Harden v. Am. Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) ("If the minor chooses benefits under the contract, he may not avoid his obligations thereunder").

## CONCLUSION

This Court should order that this dispute be addressed through individual arbitration, and should stay all proceedings in this matter until the arbitration is completed.

Dated: June 15, 2020

Respectfully submitted,

/s/ *Robert N. Hochman*
Robert N. Hochman
Theodore R. Scarborough
Jillian Sheridan Stonecipher
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
rhochman@sidley.com
tscarborough@sidley.com
jstonecipher@sidley.com

*Attorneys for Defendant the College Board*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Jillian S. Stonecipher*